```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

AMBER ADKINS and
JAMES ADKINS,

      Plaintiffs,

v.                             Civil Action No. 2:23-cv-00745

ZACHERY RATLIFF,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is plaintiffs' Motion to Remand (ECF No. 5), filed December 1, 2023.  The defendant filed his response (ECF No. 7) on December 11, 2023.

## I. BACKGROUND

Plaintiffs Amber Adkins and James Adkins, a married couple, allege that on or about April 15, 2023, they were driving a 1999 Chevy truck on state route 65 in Mingo County, West Virginia, when the defendant, Zachery Ratliff, who was operating a 2017 Toyota sports car, struck plaintiffs' vehicle. Compl. ¶ 3.  Plaintiffs contend that the collision resulted from defendant's negligent and unlawful attempt to pass their vehicle and that as a result of the collision, each plaintiff

> suffered permanent injuries to various parts
> of [his/her] body;  suffered past, present,

>and future medical expense; has suffered past and present pain and suffering and will suffer pain in the future; has suffered diminution to [his/her] ability to enjoy life; has suffered from physical and mental anguish; has suffered annoyance, aggravation, and inconvenience, and further, has suffered diminution in her ability to earn money and enjoy life . . . .

Compl. ¶¶ 5, 6.

According to the defendant, a State Farm Mutual Automobile Insurance Company ("State Farm")[1] claim specialist sent an email to "gks0405@frontier.com" (which defendant avers is the email address of plaintiffs' attorney, Greg K. Smith) on May 26, 2023, to which was attached the "State Farm Car Policy Booklet" for the state of Kentucky, where defendant was insured, including the insured's declarations page containing policy limits. See Def.'s Resp. 3; Email from A. Clark to "gks0405@frontier.com", May 26, 2023, Def.'s Resp. Ex. 1, ECF No. 7-1. On the declarations page for the policy ascribed to Kim R. Ratliff, the liability coverage bodily injury limits are listed as $100,000 for each person. See Email from A. Clark to "gks0405@frontier.com", May 26, 2023, at ECF No. 7-1 p. 19.

Plaintiffs' attorney sent separate demand letters to State Farm on behalf of Amber Adkins and James Adkins on August

---

[1] State Farm is the provider for the automobile policy under which defendant is insured.

2, 2023, and November 2, 2023, respectively. The demand letter on behalf of Amber Adkins lists $8,494 in itemized medical specials and demanded the liability policy limits. Letter from G. Smith to A. Clark, Aug. 2, 2023, Pls.' Mem. Supp. Ex. C, ECF No. 6 at p. 9 ("Please be advised that based upon the severe nature of my client's injuries I have been authorized to demand your liability policy limits herein."). The demand letter on behalf of James Adkins lists $11,896 in itemized medical specials, and similarly demanded the policy limits. Letter from G. Smith to A. Clark, Nov. 2, 2023, Pls.' Mem. Supp. Ex. D, ECF No. 6 at p. 11.

State Farm responded to Amber Adkins on October 12, 2023, with a settlement offer of $10,102. Letter from A. Clark to G. Smith, Oct. 12, 2023, Pls.' Mem. Supp. Ex. A, ECF No. 6 at p. 6. On November 7, 2023, State Farm sent to James Adkins a settlement offer of $22,505. Letter from T. Turner to G. Smith, Nov. 7, 2023, Pls.' Mem. Supp. Ex. B, ECF No. 6 at p. 7.

This action was filed in the Circuit Court of Mingo County on October 16, 2023 – after the settlement offer was extended to Amber Adkins but prior to the demand or offer as to James Adkins. Defendant filed a notice of removal (ECF No. 1) on November 17, 2023, contending that this court has original jurisdiction over this action pursuant to the diversity

jurisdiction statute at 28 U.S.C. sections 1332 and 1441(b). Plaintiffs reside in Delbarton, West Virginia, and defendant resides in Louisa, Kentucky. Notice of Removal 2. Plaintiffs' motion to remand contends that this court lacks subject matter jurisdiction to hear the case inasmuch as the amount in controversy requirement is not met. Mot. Remand.

## II. LEGAL STANDARD

"Article Three courts are courts of limited jurisdiction, possessing only the authority granted by the Constitution and Congress." Scott v. Cricket Commc'ns LLC, 865 F.3d 189, 194 (4th Cir. 2017) (citing Strawn v. AT & T Mobility LLC, 530 F.3d 293, 269 (4th Cir. 2008)). 28 U.S.C. section 1332(a)(1) provides district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." If a plaintiff files in state court but a federal court would also have jurisdiction over the case, a defendant may remove the case to federal court by "fil[ing] in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)).

4

"Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction," meaning that an action must be remanded "[i]f federal jurisdiction is doubtful." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). Thus, the removing party bears the burden of demonstrating jurisdiction. Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005) (citing Mulcahey, 29 F.3d at 151).

"If a complaint 'does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000].'" Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013) (alteration in original) (quoting De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993)); see also Scott, 865 F.3d at 194 ("When a plaintiff's complaint leaves the amount of damage unspecified, the defendant must prove evidence to 'show . . . what the stakes of litigation . . . are given the plaintiff's actual demands.'" (quoting Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005))).

"To resolve doubts regarding a defendant's asserted amount in controversy, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-

5

in-controversy requirement has been satisfied.'" Scott, 865 F.3d at 194 (quoting Dart Cherokee, 574 U.S. at 88).

> Estimating the amount in controversy is not nuclear science, as a removing defendant is somewhat constrained by the plaintiff. After all, as masters of their complaint plaintiffs are free to purposely omit information that would allow a defendant to allege the amount in controversy with pinpoint precision. In many removal cases, a defendant's allegations rely to some extent on reasonable estimates, inferences, and deductions. . . . The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but an estimate of the amount that will be put at issue in the court of the litigation.

Scott, 865 F.3d at 196 (internal citations and quotation marks omitted). In the Fourth Circuit, "it is well settled that the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) (quoting Gov't Emps. Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964)); see also Hannah v. Mullins Fam. Funeral Home LLC, No. 2:20-cv-00617, 2021 WL 711215, at *5 (S.D.W. Va. Feb. 23, 2021) (Copenhaver, J.) (the court "aggregate[s] the value of all legal and equitable claims when determining whether the amount in controversy is met" (citing JTH Tax, Inc. v. Frashier, 624 F.3d 635, 639 (4th Cir. 2010))).

"[T]he court looks to a variety of . . . factors in determining whether the jurisdictional amount is satisfied,"

including, "the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, [which] may be shown by the amounts awarded in other similar cases." Campbell v. Rests. First/Neighborhood Rest., Inc., 303 F. Supp. 2d 797, 798 (S.D.W. Va. 2004) (quoting McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481, 489 (S.D.W. Va. 2001) (internal quotation marks omitted). Additionally, the court may review "evidence of any settlement demands made by the plaintiff prior to removal although the weight to be given such demands is a matter of dispute among courts." Id.

"Once jurisdiction exists, subsequent events, such as the determination that one of the aggregated claims [is] without merit, do not destroy the jurisdictional basis to dispose, on the merits, of claims" aggregating to less than the amount-in-controversy requirement. Griffin v. Red Run Lodge, Inc., 610 F.2d 1198, 1204 (4th Cir. 1979) (citations omitted) (reciting this principle in the context of 28 U.S.C. § 1332's former $10,000 amount in controversy requirement).

### III. ANALYSIS

As previously noted, the motion to remand challenges only the amount in controversy. Insofar as the parties sufficiently allege diversity of citizenship and this diversity

7

is not challenged, the court's discussion is limited to the amount in controversy only.

The defendant asserts that the amount in controversy requirement has been met because, "[p]rior to suit, the plaintiffs each made demands of $100,000 to resolve their claims, presumably taking the position that the combined value of their claims are $200,000, well above the threshold for diversity jurisdiction."  Notice of Removal 5.  While admitting that they each made demands of the policy limits, plaintiffs contend that they did "not know[] what the policy limits were at the time because State Farm Insurance refused to disclose the amount of the liability limits prior to litigation."  Pls.' Mem. Supp. 2.

Plaintiffs argue that the amount in controversy has not been met because defendant's insurance offered only $10,102 to Amber Adkins and $22,500 to James Adkins.  Pls.' Mem. Supp. 1.

The question is whether plaintiffs' demand that State Farm pay them each the insurance limit is sufficient to establish that the amount in controversy is above the jurisdictional amount.

First, as to plaintiffs' defense that they were unaware of the policy limits at the time they requested them,

defendant offers evidence that State Farm "forwarded to plaintiffs' counsel a copy of the declarations page and insurance policy" on May 26, 2023, and that the policy limits were thus known by plaintiffs at the time they made their demands. Def.'s Resp. 3 (citing Email from A. Clark, May 26, 2023; Letter from G. Smith to A. Clark, Nov. 2, 2023; Letter from G. Smith to A. Clark, Aug. 2, 2023). This evidence is uncontested by plaintiffs.

The defendant emphasizes the timing of James Adkins' demand, which was sent two weeks after the complaint in the instant action was filed. Defendant asserts this "shows that Mr. Adkins believed that the lawsuit he filed two weeks earlier had claims valued at $100,000 for his claims which, in light of his alleged medical specials and claimed injuries including at least two broken ribs, i[s] certainly feasible." Id. at 3–4. The defendant concludes that plaintiffs, "when they made their special initial assertions of the values of their respective claims of $100,000 each, having already been apprised of the policy limits . . . maintained their damages were far in excess of the defendant's liability limits," and asks that the court "find that the plaintiffs' informed demand letters for $100,000 each" satisfy the amount in controversy requirement. Id. at 4.

In support of his argument that the amount-in-controversy requirement is satisfied, defendant cites <u>Campbell v. Restaurants First/Neighborhood Restaurant, Inc.</u>, where the plaintiff, resisting removal, had previously made a settlement demand of $150,000. 303 F. Supp. 2d 797, 798 (S.D.W. Va. 2004) (Haden, J.). In evaluating the weight of the settlement demand, the court wrote:

> One of the primary functions of a demand letter is to convey to the defending party one's estimation of the value of the case. It is true many plaintiffs will 'open high,' on the assumption the negotiation process will whittle the initially requested sum to some degree. It is also true, however, an initial demand might actually be somewhat below the case's real value when an injured plaintiff is seeking an expeditious recovery without the time and expense further litigation and a jury trial might entail.

<u>Id.</u> at 799. In addition to the demand letter, the plaintiff in <u>Campbell</u> emphasized in the complaint the "painful, and permanent, nature of her injuries," and had medical bills totaling just under $20,000. The court found, "when one considers the additional elements of pain and suffering and future damages, one can easily conclude the amount in controversy is satisfied." <u>Id.</u>

The court finds by a preponderance of the evidence that plaintiffs knew what State Farm contended the policy limits were at the time they made their demand and that plaintiffs thus

10

demanded $200,000 to settle their claims. Moreover, plaintiffs' medical damages in excess of $20,000, coupled with the additional allegations of the severity of their injuries (such as asserting that they suffered permanent injuries and that pain, suffering, and other damages will continue into the future), as in Campbell, is sufficient to show the amount-in-controversy requirement is met.

## IV. CONCLUSION

Based on the foregoing, it is ORDERED that the plaintiffs' motion to remand be, and it hereby is, DENIED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: January 30, 2024

John T. Copenhaver, Jr.
Senior United States District Judge